UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RICHARD W. ILLES, SR., M.D.,   :   **CIVIL NO. 1:09-CV-1166**
                      :
        Plaintiff      :   (Judge Caldwell)
                      :
      v.           :   (Magistrate Judge Smyser)
                      :
KEVIN DEPARLOS and STEVEN   :
BLANK,                  :
                      :
       Defendants     :


## <u>**REPORT AND RECOMMENDATION**</u>


**<u>Background</u>**.

       This civil action was started by a complaint filed by the plaintiff in the Court of Common Pleas of Lycoming County. The plaintiff, Richard W. Illes, Sr., ("Illes") brings claims under 42 U.S.C. § 1983 against Kevin DeParlos, the Warden of the Lycoming County Prison, and Steven Blank, the Deputy Warden of the Lycoming County Prison. The case was removed to this court by the defendants on June 18, 2009.

**The Plaintiff's Allegations**.

Illes was convicted in the Lycoming County Court of Common Pleas of first degree murder and is serving a sentence of life imprisonment in the State Correctional Institution at Albion. He has returned to the Lycoming County Prison on three occasions for hearings on his Post Conviction Relief Act petition. He is complaining in his complaint about the conditions of his confinement when he has been housed at the Lycoming County Prison. In particular, he has been confined on these occasions to the Special Management Unit ("SMU") of the county prison, even though he is a general population prisoner while in the state correctional institution, and he considers the conditions in the Lycoming County Prison's SMU to be cruel and unusual punishment.

He acknowledges in his complaint that he did try to commit suicide while in the Lycoming County Prison in 2004, a week after he had been convicted. He alleges that he had a major depressive episode. After that, he alleges, due to anti-depressive medications his condition stabilized and he was and is no longer suicidal. Although during his earlier returns to

the Lycoming County Prison following his conviction he was housed in an observation cell in the general population, he was then later housed in the SMU when he was returned to the county in 2008 and in 2009 for hearings in his PCRA proceedings. He was informed on these later Lycoming County Prison confinements by medical staff, who evaluated him when he arrived at the County Prison, that on the instructions of the Warden and Deputy Warden he was to be housed in the SMU. Neither the Warden nor the Deputy Warden ever interviewed him or evaluated him, he alleges.

He alleges in the complaint that in the SMU he could not use a telephone to contact his attorney or his family members. He had no writing implement and could not communicate with the Warden to complain of the conditions of his confinement in the SMU until Lt. Hartley provided a pencil to him to write a complaint to the Warden. He communicated his complaints then to the defendants, and the defendants told him in response that he was there because of his 2004 suicide attempt.

He alleges in the complaint that he presented no disciplinary problems that justified keeping him in the SMU and that he did not have a medical condition or a psychological condition that justified his placement in a special management housing area.

The complaint alleges that there was constant loud yelling and racial slurs in the SMU. There were psychotic outbursts, banging on walls and doors throughout the day and night, the throwing of stool at staff by inmates, a constantly illuminated 6.5 foot times 10.5 foot cell with only a bed, toilet and sink, a shower and brushing of his teeth only every other day, and a thin, worn and hard mattress (which harmed Illes who has severe arthritis and a cervical spine fusion, and who has had knee surgery and wrist surgery). Illes could not sleep under the conditions that he was required to experience in the SMU. He experienced a recurrence of depression and was again placed on antidepressant medication. He suffered severe anguish in the SMU. The cells had blood, stool and food stains. He was denied exercise opportunities. Cell searches were timed at 11:30 p.m. so as to be disruptive of sleep and

exercise was timed from 2:00 a.m. to 4:00 a.m. without a reasonable justification for that scheduling. This SMU confinement caused illnesses to Illes, he alleges.

He alleges that he was not provided with writing materials while he was in the SMU, and that he could not initiate communications with his attorney, in violation of his First Amendment rights.

**The Plaintiff's Claims**.

Illes asserts that his SMU placement was cruel and unusual punishment in violation of the Eighth Amendment and that it was done in retaliation against him for his challenges to his Lycoming County conviction in violation of his First Amendment and Fourteenth Amendment rights.

The complaint asks for injunctive relief in the form of an order to the defendants not to place the plaintiff in the SMU in the absence of a valid and reasonable penalogical reason in future instances where the plaintiff is transferred to the Lycoming County Prison, to provide clean cells in the SMU, to

provide writing materials to prisoners confined in the SMU, to permit SMU prisoners to have access to their attorneys, to provide SMU prisoners with daily exercise opportunities, and to restrain from searching SMU prisoners' cells without just cause.  The plaintiff also asks for compensatory and punitive damages and for costs.

**Prior Dispositive Motion**.

The defendants filed a motion to dismiss the complaint on June 26, 2009.  That motion was denied by Order of September 24, 2009.  (Doc. 11).

**The Defendants' Motion for Summary Judgment**.

On October 15, 2010 the defendants filed a motion (Doc. 65) for summary judgment, a LR 56.1 statement (Doc. 68) of the facts not in dispute, affidavits, documentation and a supporting brief.  (Doc. 66).  A brief (Doc. 69) in opposition was filed by the plaintiff.  He filed an affidavit (Doc. 70) and a LR 56.1 statement (Doc. 71).  The defendants field a reply brief (Doc. 73) on November 12, 2010.

According to the defendants' LR 56.1 statement, when the plaintiff complained to the defendants of his SMU confinement, he was told by defendant Deputy Warden Blank that he was in the SMU for his own protection based on "your previous suicide threats and attempt." (Doc. 68, ¶10). The defendants in their LR 56.1 Statement say,

> [B]ased on the following factors, we determined to house Plaintiff in the special management unit: Plaintiff's serious criminal history and life sentence; the uncertainty whether Plaintiff's self injury in 2004 was an attempt at suicide or escape; Plaintiff's involuntary commitment and treatment to Warren State Hospital for approximately one month in 2004; his discharge diagnosis from Warren State Hospital; the information on the Temporary Transfer Information Sheets from SCI-Albion and accompanying information; the Transfer Health Information Sheets from SCI-Albion; the context of his incarceration at the Prison for the post conviction relief hearings; and the potential risk of this inmate in attempting self injury again.
>
> Plaintiff was housed in SMU for his own protection and for the protection and security of the Prison, its correctional staff and the community.

*Id.* at ¶¶ 45, 46 (internal citations omitted).

The defendants' LR 56.1 Statement also states:

49. The mattresses in SMU are the same mattresses in all other blocks in the Prison.

50. SMU inmates are permitted recreation five hours a week.

51. SMU inmates are permitted to shower every other night.

52. SMU inmates were permitted professional visitors such as attorneys.

53. SMU inmates could arrange telephone calls to attorneys through the prison counselors if necessary.

54. Inmates housed in Cell K-89 have housing conditions similar to those in SMU.

55. Inmates, like Plaintiff, who were represented by an attorney in their criminal cases suffer no harm by not being permitted to attend the law library and not having access to writing implements.

The defendants state and argue that the plaintiff's confinement in the SMU was not disciplinary or retaliatory, but was for the plaintiff's own safety.

The defendants state that the plaintiff was at all times represented by an attorney. *Id.* at ¶67.

The plaintiff in his Statement of Material Facts (Doc. 71) states that he was not given an Inmate Handbook. He reiterates that he was effectively denied exercise, that he was effectively denied access to his attorney, that he could not phone his attorney, that he was prevented from preparing and filing a civil action to challenge his SMU confinement, and that the defendants did have an animosity towards him.

**Summary Judgment Standard**.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

**Analysis**.

The defendants argue that the plaintiff's request for injunctive relief is moot because the plaintiff is not confined at the Lycoming County Prison and as a life-sentenced state prisoner will not in the future be confined at the Lycoming County Prison.

The plaintiff has no certain or likely return to confinement at the Lycoming County Prison, in that his post-conviction challenges to his conviction have been exhausted. Nor is there a basis for a determination to be made that if the plaintiff is returned to the Lycoming County Prison the defendants will place him in the SHU. His claim for an injunction directing the defendants not to confine him in the SHU and for other prospective relief is moot. It should be dismissed because it is moot.

The defendants argue that the plaintiff failed to exhaust the remedial process that was available to him to challenge the conditions of his confinement of which he complains in this civil action. They assert that the plaintiff's claims should be dismissed on the basis of a failure to exhaust.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

11

> correctional facility until such administrative
> remedies as are available are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The plaintiff did use the prison grievance process to the end of a grievance submitted to and addressed by the prison warden. The defendants assert, however, that it was necessary as a preliminary to a civil action for the plaintiff to address a complaint to the Lycoming County Prison Board because that Board has authority over the warden by application of state law, 61 P.S. § 1731. The written grievance procedure of the prison does provide for a written complaint to the Prison Board as a last step. Inmate Handbook, Doc. 68-3.

The plaintiff asserts that as a SMU prisoner, he did not have access to an Inmate Handbook, and the defendants concede that this is true. The defendants argue that the plaintiff should have asked for a copy of the Inmate Handbook while he was in the state prison or should have used the grievance procedure to obtain a copy of the Inmate Handbook. These suggestions are unrealistic. If the prison officials want to have the opportunity to address grievances before litigation and want to have exhaustion defenses, then it is incumbent upon them to provide reasonable notice to the prisoner of the grievance procedure. Administrative remedial

procedures must under the statute be available.  Procedures of
which the prisoner is unaware and could not reasonably be
expected to be aware can not reasonably be said to be
available.  Here it is in dispute whether the plaintiff was
aware of a grievance procedure step involving the Prison Board
and if not whether he reasonably should have been aware of that
step.  The material issue of whether administrative remedial
procedures were available and were exhausted is not shown to be
an issue as to which it can be concluded that there is not a
genuine dispute.  The defendants' motion insofar as it is based
upon a failure to exhaust should be denied.

    The defendants argue that summary judgment in their
favor should be granted as to the plaintiff's claims of a
denial of access to the court, of retaliation for the exercise
of a constitutional right and of cruel and unusual punishment
in violation of the Eighth Amendment.

    The complaint involves three periods of time during
which the plaintiff was confined in the SMU at the Lycoming
County Prison, periods of six days (October 23 to 29, 2008),

four days (December 11 to 15, 2008) and 28 days (March 19, 2009

to April 17, 2009).  The defendants' rationale for confining

the plaintiff in this restricted housing block was that the

plaintiff was thought by them to be a prisoner who was a

possible suicide threat, a possible escape risk and a possible

danger to other prisoners and to staff.  The strength of the

defendants' rationales for these concerns is debatable;

however, it is manifest that placement for brief periods of

time in a restricted housing section of a prison is a form of

confinement and involves incidents of confinement that a

convicted prisoner must expect.  In *Hewitt v. Helms,* 459 U.S.

460 (1983), the Court held that a state prisoner does not have

a protected liberty interest in remaining in the general

prisoner population unless such an interest is created under

state law.  The "transfer of an inmate to less amenable and

more restrictive quarters for nonpunitive reasons is well

within the terms of confinement ordinarily contemplated by a

prison sentence."  *Id.* at 468.  Given the fact that the

plaintiff was a temporary inmate who was to stay at the prison

for short periods of time, it is plain that he had no

constitutional liberty expectation of some less restrictive

conditions of confinement such as the conditions generally known as general population. Accordingly, the plaintiff had no due process right to not to be confined to the SMU.

The plaintiff's first count is that the conditions of his confinement during these three periods of time amounted to cruel and unusual punishment. *See* Complaint, ¶¶ 35-52. The conditions of confinement as described were very base and difficult, and the plaintiff attributes punitive motivations to the defendants' selection and use of certain of the practices that he describes, such as 11:30 p.m. cell searches and a 2:00 a.m. to 4:00 a.m. exercise period.

The plaintiff also complains that his days and nights in the SMU were made miserable for him by the behavior of his fellow SMU inmates, a constantly lighted cell bearing indicia of blood, stool and food stains, the smallness of his cell and his 24-hour-a-day confinement to the cell, the sparseness of cell furnishings, being limited to an every-other-day opportunity to shower and to brush his teeth, and a thin, worn and hard mattress. He complains also that the conditions of

his confinement caused physical problems for him and mental stress problems leading to physical problems.

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the inmate's Eighth Amendment rights.  *Farmer v. Brennan*, 511 U.S. 825 (1994).  An Eighth Amendment claim arising from confinement conditions not formally imposed as a sentence for a crime require proof of a subjective component.  *Wilson v. Seiter*, 501 U.S. 294 (1991).  The standard for that state of mind requirement is the deliberate indifference standard.  *Helling v. McKinney*, 509 U.S. 25 (1993).

The defendants' justification for the plaintiff's SMU placement is that they had a concern that he would attempt suicide and a concern that he would attempt to escape.  They felt that his earlier ostensible suicide attempt might have been an attempt to facilitate an escape.  These reasons seem questionable, and better ways than SHU confinement of addressing the concerns may have been available.  The reasons for the defendants' determination to house the plaintiff in the

SMU is stated in defendant Deparlos' affidavit. Doc. 68-2. Whether these were the reasons is disputed by the plaintiff. However, the plaintiff presents insufficient evidence to support an inference of deliberate indifference on the part of the defendants to a substantial risk of serious harm to the plaintiff to give rise to a genuine dispute.

Summary judgment in favor of the defendants should be granted as to the Eighth Amendment claim because there is not a genuine dispute as to the material factual issue whether the defendants acted with deliberate indifference to a substantial risk of serious harm to the plaintiff in determining to place the plaintiff in the SMU and because the defendants are entitled to a judgment in their favor on this issue as a matter of law.

The second claim of the plaintiff is that his right to freedom of speech was violated by the defendants in that they denied or ordered the denial of multiple requests of the plaintiff for writing materials to write to his attorney, to family members and to the court. The defendants argue that

insofar as the second count involves a claim of a denial of the right of access to the court the plaintiff does not present any showing that he was actually injured in his preservation and advancement of his legal rights by not having writing materials.

Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008). There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

The first category of actionable claims is a forward-looking claim. *Id.* The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.* The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the

plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category of actionable claims of denial of access to the courts is a backward-looking claim. *Id.* at 413-14. Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15. The right of access to the courts "is ancillary to the

underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must allege an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.* Like any other element, the underlying cause of action "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. In the prison setting, actual injury is the loss of a non-frivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996).

In the third count of the complaint the plaintiff alleges that in the days of his third SMU confinement at the Lycoming County Prison in March and April of 2009 he suffered actual injury in the denial to him of writing materials or telephone access in that he wanted to contact his attorney to challenge his SMU confinement. The grounds upon which his SMU

custody would have been challenged is not stated.  Since both
the second and third counts involve claims of the denial of the
plaintiff's right of access to the court, we will address the
two counts together.

The defendants argue that the plaintiff does not show
an actual injury arising from his lack of writing materials and
of access to a way to communicate with his attorney.  The
plaintiff asserts that he would have sought to challenge his
SMU confinement if he could have obtained outside assistance.
He might have been able to obtain some help in effecting some
changes in the conditions of his confinement if he were not
entirely unable to communicate outside the SMU cell block.  We
can not find that there is not a possible reasonable inference
of an actual injury.

The defendants do not address the factual merits of the
plaintiff's claim of having no writing materials or access to a
telephone during his periods of SMU confinement.  They do not
indicate whether SMU inmates as a matter of policy and routine
practice are not given writing paper or access to a telephone

or whether an individualized determination in the plaintiff's case was made.

The defendants assert that the plaintiff does not make a showing of any actual injury, and that his First Amendment claim as to his ability to communicate with his attorney and with the court is a claim as to which summary judgment for the defendants should be granted.

The defendants do not address the plaintiff's claim that he was prevented from communicating with his family.

The many cases concerned with prisoner First Amendment rights establish very plainly that when a prison regulation or practice or interest is determined by a prison official to warrant limiting the ability of the prisoner to convey or to receive information, there must be a justification for it. Some showing must be made of a legitimate penalogical interest. *See,* e.g., *Beard v. Banks*, 548 U.S. 521 (2006); *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley,* 482 U.S. 78 (1987); *Procunier v. Martinez*, 416 U.S. 396 (1974). The

justification expressed by defendant Warden Deparlos for depriving the plaintiff of access to the law library and of writing materials is that the plaintiff would thereby suffer no harm. (Doc. 68, No. 55). The plaintiff was apparently deprived of the ability to communicate at all, whether with his attorney or a family member or another correspondent. The justification for that is not self-evident. It is not a deprivation that self-evidently was based upon a legitimate penalogical interest.

The defendants argue in their brief that the plaintiff's propensity toward violence as demonstrated by his murder of his wife and his manipulative and calculating personality justified the decision to preclude correspondence or even note-recording opportunities to him. But the defendants do not explain their decision to preclude writing materials and do not explain how the plaintiff's propensity to violence or manipulative personality justified the total prohibition. Accordingly, there is not an absence of a genuine issue as to the First Amendment claims of the plaintiff.

There is not shown by the defendants to be an absence of a genuine dispute as to a material issue of fact as to whether the plaintiff was denied the right of access to the courts as well as a First Amendment right to communicate with other persons.

**Recommendations**.

It is recommended that the defendants' motion for summary judgment be granted in part and denied in part. It is recommended that summary judgment in favor of the defendants be granted as to the plaintiff's claims for injunctive relief on grounds of mootness. It is recommended that summary judgment in favor of the defendants be granted as to the plaintiff's claims of Eighth Amendment violations. It is recommended that the defendants' motion be denied as to the assertion that the plaintiff failed to exhaust available administrative remedies and that the motion be denied as to the plaintiff's claim of a denial of his First Amendment rights in the denial of access to

writing materials, telephone access and other means of

communicating with his attorney, other persons and the court.


It is recommended that the case be listed for trial.



**/s/ J. Andrew Smyser**
J. Andrew Smyser
Magistrate Judge

Dated:  December 8, 2010.